IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| GAIL HART, ADMINISTRATOR OF THE ESTATE OF ALVA M. COYKENDALL | ) ) ) | CASE NO.  1:15 CV 10000 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| HONEYWELL INTERNATIONAL, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |


This matter is before the Court on multiple motions for summary judgment:  (1)  Motion

for summary judgment (partial) on Plaintiffs' Common Law Product Liability Claims, filed by

Ford Motor Company (ECF #78); (2)  Motion for Summary Judgment on Plaintiffs' Statutory

Product Liability Claims for Compensatory Damages, filed by Ford Motor Company (ECF #79);

(3) Motion for Summary Judgment, filed by Genuine Parts Company (ECF #81); (4) Motion for

Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages, filed by Ford Motor

Company (ECF #83); (5) Motion for Summary Judgment, filed by Honeywell International, Inc.

(ECF #84); and, (6) Motion for Summary Judgment, filed by Pneumo Abex, LLC (ECF #85).

Ford has also filed a Motion for Sanctions.  (ECF#80).  Plaintiffs have responded to each motion,

except the Motion for Partial Summary Judgment on Plaintiffs' Common Law Product Liability

Claims (ECF #78), and Defendants have filed replies in support of their motions.  (ECF # 89, 91,

92, 94, 95, 97, 98, 99, 100, 102, 103).   Oral argument was held on October 27, 2016, at the end

of which, the Court permitted the parties to file any supplemental information they wanted to

have considered in the final ruling.  Pneumo Abex, LLC was the only party to file a

Supplemental Brief.  (ECF #111).  The issues are now fully briefed and the motions are ready for

disposition.

## Facts[1]

Plaintiff, Gail Hart, is the executor of the Estate of decedent Alva Coykendall.  The

Complaint alleges that Mr. Coykendall worked with a substantial amount of asbestos-containing

brake and clutch friction materials manufactured and sold by the Defendants.  He testified during

his deposition that he did work as an uncertified mechanic from approximately 1972 through

2014.  During that time, he testified that he performed work on brakes and clutches, among other

things.  He estimated that he performed thousands of brake changes, and was also exposed to

brake dust when working on vehicles that did not require a full brake change.   He also testified

that he may have changed clutches on vehicles between one hundred and twenty and one

thousand times.   He believes that this work exposed him to asbestos fibers throughout the course

of his career as a mechanic.  In July of 2014, Mr. Coykendall was diagnosed with malignant

---

[1]
The factual summary is based upon the parties' statements of facts.  Those material facts
which are controverted and supported by deposition testimony, affidavit, or other
evidence are noted to be in dispute and will be accepted in the light most favorable to the
Plaintiffs, the non-moving party, for purposes of this motion.

mesothelioma.  Eight months later, at the age of fifty-four, Mr. Coykendall passed away.

The parties disagree as to whether Mr. Coykendall's exposure to asbestos from automotive friction parts (brakes and clutches) caused Mr. Coykendall's specific type of mesothelioma; whether he had more than de minimus exposure to each Defendant's product; whether certain defendants had provided adequate warnings on their asbestos-containing products; and, whether he was, in fact, actually exposed to causally significant levels of asbestos containing dust.

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing prior FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252.  However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover.  The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  A party asserting that a fact is genuinely disputed must cite "to particular parts of materials in the record" or show "that the [admissible] materials cited [by the other party] do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P. 56(c).

FED. R. CIV. P. 56(e) states:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...

-4-

consider the fact undisputed for purposes of the motion; [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it. . .

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'"  *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(c) also has certain, more specific requirements:

An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Wiley* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

**Analysis**

I. Common Law Claims

Plaintiffs' first, second, third, fourth, seventh, and ninth causes of action assert common law theories of recovery.  The Defendants seek dismissal of these claims because Ohio's Product Liability Act, O.R.C. 2307.71, *et seq.*, expressly eliminated these common law claims: "Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability claims or causes of action."  O.R.C. 2307.71(B).  This express abrogation of common law product liability claims has been consistently recognized by the Ohio courts since 2008, when the abrogation amendment to the Ohio Product Liability Act went into effect.  *See, e.g., Doty v. Gellhauer Elec., Inc.*, 888 N.E.2d 1138, 1142 (Ohio Ct. App. 2008); *Jones v.Walker Mfg. Co.*, No. 97301, 2012 WL 1142889, *4 (Ohio Ct. App. Apr. 5, 2012).  The Plaintiffs do not contest that these claims are no longer viable under Ohio law.  They did not oppose Defendants' request for summary judgment on these counts[2] and, in fact, expressly conceded this issue at oral

---

[2]

  Defendants, Genuine Parts, and Pneumo Abex, LLC,  sought summary judgment on this basis for Counts One through Four: Negligence, Strict Liability, Breach of Express Warranty, and Breach of Implied Warranty.  (ECF #81-1, 85).  Defendants Honeywell, and Ford sought summary judgment on the above claims, plus the conspiracy claim in Count Seven on the same grounds.  (ECF # 78, 84).  In addition, Pneumo Abex, sought dismissal

argument.  The claims raised under Counts One, Two, Three, Four, Seven, and Nine of Plaintiffs'

Amended Complaint are, therefore, dismissed.

II.  <u>Failure to Warn</u>

A claim for failure to warn arises under Ohio Revised Code §2307.76(A)(1), which states

that a product is "defective due to inadequate warning or instruction at the time of marketing if,

when it left control of the manufacturer, both of the following applied:

> (a)  The manufacturer knew or, in the exercise of reasonable care, should have
> known about a risk that is associated with the product and that allegedly
> caused harm for which the claimant seeks to recover compensatory damages;
>
> (b)  The manufacturer failed to provide the warning or instruction that a
> manufacturer exercising reasonable care would have provided concerning that
> risk, in light of the likelihood that the product would cause harm of the type
> for which the claimant seeks to recover compensatory damages and in light of
> the likely seriousness of the harm.

A plaintiff asserting a claim under this section of the Ohio Product Liability Act must

establish that the failure or inadequacy of the warning was the proximate cause of his or her

injury.   O.R.C. § 2307.73(A)(2).   The standard for establishing causation is that the alleged

harm would not have occurred but for the defendant's conduct.  Conversely, if the harm would

have occurred regardless of whether the defendant did or did not provide an adequate warning,

there is not sufficient causation to hold the defendant liable under this theory.  *See, Anderson v.*

---

of the Count Seven conspiracy claim on different grounds.  (ECF #85).  Whether or not
conspiracy was one of the common law claims intended to be abrogated by the product
liability statutes, Plaintiffs have conceded that this claim should be dismissed both
expressly, at oral argument, and implicitly, by failing to respond in any way to any of the
Defendants' requests for summary judgment on this claim.  The Ninth claim for wrongful
death is also asserted as a common law claim, and although it was not specifically
addressed by any of the Defendants, it fails for all of the same reasons as do the other
common law claims.

*St. Francis-St. George Hosp., Inc.*, 671 N.E.2d 225, 227 (Ohio 1996)("the defendant's conduct is not the cause of the event (or harm) if the event (or harm) would have occurred regardless of the conduct.").  A failure to provide any warning creates a rebuttable presumption of causation in failure to warn cases.  A defendant may rebut this presumption with affirmative evidence that a plaintiff either did not read a warning that was provided, or would not have heeded an adequate warning, had it been provided. *See, Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 838 (Ohio 1981);[3] *Wade v. Diamant Boart, Inc.*, 179 Fed. Appx. 352, 355-356 (6th Cir. 2006); *Webb v. Smith*, No. 18859, 1998 WL 801944, *5 (Ohio Ct. App. Nov. 18, 1998).

In this case, Mr. Coykendall testified, repeatedly and in no uncertain terms, that he did not read any of the warnings that were on the parts he used as a mechanic, and that he "probably" would not have changed his practices based upon any warnings that would have been provided.[4]

-----

[3]

The Sixth Circuit originally limited the application of *Seley* to common law cases involving products which are "incapable of being made safe for their ordinary use." *Overbee v. Van Waters & Rogers*, 706 F.2d 768 (6th Cir. 1983).  Asbestos has been identified by Ohio courts as such a product. *See, Smith v. Walter C. Best, Inc.*, 756 F.Supp. 878, 882 (W.D. Pa 1990).  The Court could not locate any Ohio Supreme Court or Court of Appeals case, nor any Sixth Circuit case that applied the *Seley* presumptions after the abrogation of common law product liability claims under the Ohio Product Liability Act, in 2008.  However, the case has been cited post 2008 for other related holdings, and the parties have both argued application of its holdings in this case. *See, Boyd v. Lincoln Elec. Co.*, 179 Ohio App. 3d 559 (Ohio Ct. App., Cuyahoga Cty. 2008); *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578 (6th Cir. 2013).  Further, other federal district courts have continued to apply the presumption post 2008. *See, e.g., Huffman v. Electrolux Home Prods.*, 129 F. Supp. 3d 529, 545 (N.D Ohio, 2015).

[4]

He also testified that he had been smoker since he was eighteen, even though he had seen and read warning on cigarette packs "right after he started" and knew that the surgeon general says smoking can cause cancer.  (Coykendall Depo. pg. 198-201).  This is evidence that the threat of cancer was not sufficient warning to keep him from using recreational products, and that it would also not prevent him from using cancer causing products that were actually needed for his livelihood. *Bermett v. Fred Christen & Sons Co.*, 138 Ohio

-8-

(A. Coykendall Depo. at 249-250, 323, 330, 367, 387-388, 471).  Thus, Mr. Coykendall's own testimony provides affirmative, and uncontradicted evidence rebutting the general presumption of causation in this case.[5]

Once Defendants have provided some evidence to rebut the presumption of causation, Plaintiffs "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).  In this case, however, Plaintiffs have provided absolutely no testimony or other evidence that would suggest that a warning, of any type, would have caused Mr. Coykendall to stop using the

App.3d 586, 612 N.E. 2d 954 (Ohio Ct. App. 2000)(evidence demonstrating that plaintiff is a person who is indifferent to safety warnings, such as past disregard of warnings, is sufficient to rebut the presumption of causation in failure to warn cases).

[5]  Some of the Defendants have argued that they did, in fact, provide warnings on their asbestos containing products.  This is born out by the testimony of Mr. Coykendall. (Coykendall Depo. at 330, 367, 387, 471). It is not necessary to discuss which Defendants may or may not have provided warnings at what points in time, or to analyze whether these warnings were adequate based on the risks known to the manufacturers at each period of time.  Because Mr. Coykendall testified that he did not read the warnings, and would "probably" not have changed his behavior regardless of what was contained in the warning, the Court need not decide whether any warning was provided or was adequate under the circumstances because causation cannot be established in any event.

asbestos containing products, or caused him to use any additional precautions to avoid exposure to any asbestos containing dust emanating from these products. Rather, Plaintiffs ask the Court to find that the mere existence of a rebuttable presumption, is sufficient as a matter of law to preclude summary judgment no matter what evidence may exist to rebut that presumption. They have cited no law to support this proposition.

As with other claims that incorporate a shifting burden of proof, the Court finds that once rebuttal evidence has been presented by Defendants in a failure to warn case, the presumption of causation evaporates, and Plaintiffs must show actual evidence sufficient to create a genuine issue of disputed fact. *See, Mohney v. USA Hockey, Inc*., 138 Fed. Appx. 804, 815-816 (6th Cir. 2005). In this case, they have provided none. Mr. Coykendall's own testimony rebuts the presumption and remains unrefuted. There is absolutely no evidence that could support a finding that any warning provided by the Defendants in this case would have altered Mr. Coykendall's exposure to or interactions with the asbestos containing products. As a matter of law, therefore, he cannot prove that the alleged failure to warn or inadequate warnings were the proximate cause of his injury by the requisite standard of proof. *See, Wade v. Diamant Boart, Inc*. 179 Fed. Appx. 352, 355-56 (6th Cir. 2006). Thus, summary judgment must be granted in favor of the Defendants on this claim of inadequate warning or instruction (O.R.C. § 2307.76) under Count Five of the Amended Complaint .

## III.  Design Defect

Pursuant to Ohio Revised Code § 2307.75, a product is defective in design or formulation "if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design

or formulation. . . exceeded the determined benefits associated with that design or formulation . .

. .” O.R.C. § 2307.75(A).  The statute sets forth several factors to be considered when weighing

the foreseeable risks against the benefits of the design.  O.R.C. § 2307.75(B) and (C).

However, according to O.R.C. 2307.75(F)

> A product is not defective in design or formulation if, at the time the product left
> the control of its manufacturer, a practical and technically feasible alternative
> design or formulation was not available that would have prevented the harm for
> which the claimant seeks to recover compensatory damages without substantially
> impairing the usefulness or intended purpose of the product.

The plaintiff bears the burden of demonstrating that such an alternative was available. *See, e.g.,*

*McGrath v. General Motors Corp.*, 26 Fed. Appx. 506, 509-11 (6th Cir. 2002); *Bloomer v. Van-

Kow Enters.*, No. 64970, 1994 WL 173651, *2 (Ohio Ct. App. May 5, 1994).

A.  Ohio case law: Evidentiary Standard

Expert testimony is not always needed to prove the existence of a design defect under Ohio

law.  *Grover Hill Grain Co. v. Baughman-Oster, Inc*., 728 F.2d 784 (6th Cir. 1984).  However,

expert testimony is required when the “inquiry pertains to a highly technical question of science

or art or to a particular professional or mechanical skill” a plaintiff must present expert testimony

in order to meet his or burden of proof.  *Jones v. Hawkes Hosp. Of Mt. Carmel,* 175 Ohio St. 503,

196 n.E.2d 592, paragraph one of the syllabus. (1964); see also, *Stacey v. Carnegie-Illinois Steel

Corp*., 156 Ohio St. 205, 201, 101 N.E.2d 897 (1951)(expert testimony is required when the issue

“involves a question of scientific inquiry which is not within the knowledge of lay witnesses or

members of the jury.” ).  The question in this case then becomes, is the design of automotive

braking systems and clutches, and the determination of the relative risks and benefits associated

-11-

with different designs of these products a matter that is within the knowledge of lay witnesses or members of the jury, a highly technical question of science or art, or an inquiry that pertains to particular professional or mechanical skill?

Plaintiffs contend that the unequivocal answer to this question is found in the case of *Schwartz v. Honeywell Int'l, Inc*., recently decided by the Ohio Court of Appeals for the Eight Appellate District, Cuyahoga County.  *Schwartz v. Honeywell, Int'l, Inc*., 2016 Ohio App. LEXIS 2103 (Ohio Ct. App. May 26, 2016). In that case, as in this case, the court was faced with a claim for design defect in connection with asbestos containing brake products manufactured by Honeywell International, Inc.  Applying the Ohio Supreme Court's test for when an expert witness is required to support a claim for design defect, the *Schwartz* court found that "the alleged design defect and the existence of a technically feasible alternative is not  so complex as to be beyond the knowledge of a layperson." *Id.* at **29.  Plaintiffs argue that this finding is binding upon this Court. (ECF #91, pg. 6).

Plaintiffs are mistaken as to the precedential effect of the *Schwartz* case. Although this Ohio Court of Appeals case is to be considered, neither the factual nor legal conclusions reached in that case are binding on this Court. The Supreme Court of the United States has defined what state law is to be applied in cases not arising under the Federal Constitution or Acts of Congress, that being the law as defined by state statutes and the decisions of the highest court in the state. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938).   The Supreme Court has also held that "while the 'decrees of lower state courts' should be 'attributed some weight . . . the decision [is] not controlling. . ." when the highest court of the state has not spoken. . . .'" *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 466 (1967)(*quoting King v. Order of*

-12-

*Travelers*, 333 U.S. 153 (1948)). The Sixth Circuit has further instructed that if a state's supreme court has not addressed a state law issue, federal courts should "predict how that court would rule, by looking to 'all available data.'" *Prestige Casualty Co. v. Michigan Mutual Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996)(*quoting Kinglsey Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995). "' Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the [state supreme court] would decide otherwise." *Id.* Therefore, although the Court should and shall consider the decision in *Schwartz*, it is not bound by that decision, and must consider all relevant data when deciding whether to adopt *Schwartz*'s reasoning and/or legal conclusions.

The Supreme Court of Ohio has not addressed the relative complexity of automotive friction products including such brake and clutch products as are at issue in this case, and the parties have cited no Ohio Supreme Court cases that have addressed what specific products require experts to prove a design defect claim, and which may not .  Further, the Ohio Product Liability Act is silent on what type of evidence is required to prove the elements of a design defect claim, or the existence of a suitable alternative design under O.R.C. § 2307.75(F).   Therefore, we look to all available data to determine whether the Supreme Court of Ohio would be likely to require expert evidence on this issue under the facts of this case.

The Ohio Personal Injury Practice, Section 13:13 (2014 ed.) states the expert witness testimony is necessary to establish the feasibility and practicality of alternative designs in a design defect case.  However, the appeals courts and other federal cases applying Ohio law have found experts necessary in some design defect cases, but not others.  For example, the question of whether the failure to apply Teflon coating to door hinges on automobiles was a design defect

-13-

was found by an Ohio appellate court to be less complex than necessary to trigger the need for an expert witness in a design defect case. *Atkins v. General Motors*, 132 Ohio App. 3d 556 (Ohio Ct. App. March 31, 1999).  This finding was premised, in part, on the Court's finding that there was specific technical evidence in the record, in the form of a GM Trade Service Bulletin, that gave a professional opinion on the cause of the alleged defect at issue in that case, and on a simple solution to cure that defect. *Id.* at 563. Once presented with evidence of a cause and a potential cure, most jurors, and lay witnesses would indeed understand the basic design of a door hinge, and the way that Teflon coating creates  a "non-stick" or reduced friction surface.  Similarly, Ohio courts have found that no expert was needed to support a claim for design defect of a balloon or of an unguarded conveyor belt.  *See*, *Porter v. Gibson Greetings, Inc*., 1997 Ohio App. LEXIS 5495 (Ohio Ct. App. Dec. 12 1997); *Aldridge v. Reckart Equip. Co.*, 4th Dist. Gallia No. 04CA17, 2006-Ohio-4964.

Conversely, the Ohio Court of Appeals in *Adkins v. Yamaha Motor Corp*., 17 N.E.3d 654 (Ohio Ct. App. August 25, 2014) found that although jurors and lay witnesses may generally be familiar with how vehicle rollovers occur, they cannot "adequately evaluate whether [this] risk constitutes a design defect without the benefit of expert testimony or some other evidence to show" that the harm was caused "due to a design defect." *Id.* at 662.  A court also dismissed a design defect case when the plaintiff's proposed expert was barred from testifying in a case involving a forklift accident.  Because the jury was required to evaluate the risk of an injury that could arise from a design with no rear door guard against the  risk of a different type of injury that could occur from a design that included a rear door guard, the parties conceded that expert testimony was required under Ohio law.  The court granted summary judgment against the

-14-

plaintiff when their expert was disqualified.  *Newell Rubbermaid, Inc. v. The Raymond Corp*., 676 F.3d 521, 529 (6th Cir. 2012).  An expert was also required in a car roll-over case, *Clay v. Ford Motor Co.*, 215 F.3d 663 (6th Cir. 2000), and in an automotive hydraulic pressure switch within a cruise control system, *Romans v. Tex. Instruments, Inc*., 2013 Ohio App. LEXIS 5288 (Ohio Ct. App. Nov. 18, 2013)(cert denied 138 Ohio St.3d 1451 (2014)).[6]  In many other cases, plaintiffs have simply presented expert testimony on alternative designs without ever addressing or challenging whether an expert was actually required.  *See, e.g., Sivillo v. Dreis & Krump Mfg. Co.*, 1986 Ohio App. LEXIS 7075 (Ohio Ct. App. May 29, 1986)(machine press brake).

The only case the parties have cited involving brake products similar to those at issue in this case is the *Schwartz* case.  That case concluded that when considering the use of asbestos in braking products, the existence of a design defect and the existence of a technically feasible alternative were not issues that were "so complex as to be beyond the knowledge of a layperson." Having discounted the need for expert testimony, the Schwartz court cited non-expert evidence, in form of testimony from Bendix corporate representative, Joel Cohen, which indicated that Bendix "was manufacturing non-asbestos-containing brakes during the period of time relevant to [that] case," and that "'semimetallics [non-asbestos-containing brakes] operate satisfactorily' in passenger cars."  *Schwartz* at **52-53.  In addition, the court cited testimony stating  that "[t]he improved performance of semimetallics compensates for their higher costs[.]" This lay testimony

---

[6]

Defendant Pneumo Abex LLC cites *Brown v. The Raymond Co.*, 432 F.3d 640 (6th Cir. 2005) for the proposition that brakes are complex products and require an expert to testify with regard to any design defect claims.  *Brown,* however, was decided under Tennessee law and is, therefore, not particularly relevant to the question of how Ohio courts would view this issue.

-15-

was deemed sufficient to overcome summary judgment.

This Court has similarly been presented with undisputed evidence that asbestos-free brake components were being manufactured during the time period at issue in this case.  Plaintiffs cite testimony from Byron Frantz, the corporate representative from Genuine Parts.  His testimony is cited for the proposition that a non-asbestos brake product existed as early as the 1960s.  Plaintiffs also cite testimony from Paul LaCour, the senior technical advisor for Genuine Parts: he testified that metallic, non-asbestos brake products did exist for severe duty equipment during that period of time.  (LaCour Depo., ECF #95-3, Page ID 6560).   Further, Ford did admit that it manufactured some asbestos-free brake components as early as 1983, and Honeywell admitted producing some asbestos-free components as early as 1966.   Even Mr. Coykendall testified that there were semi-metallic and ceramic brakes[7] available for use on at least some of the vehicles he serviced.   ”  (Coykendall Depo. at 322, 323, 327, 335).

Although there may be many complex issues that arise in the design of brake products in general,  jurors and other laypeople are likely to be generally familiar with what brake systems do and how friction braking works, and to be familiar with the risks of asbestos exposure.  Pairing this general familiarity with the product and issues at hand, with the undisputed evidence that at least some form of non-asbestos brake product was being manufactured and sold during

---

[7]

  Mr. Coykendall appears to contrast metallic, semi-metallic, and ceramic brakes against asbestos-containing brakes.  (Coykendall Depo. at 322, 325, 335).  However, none of the parties have pointed to specific testimony, or other evidence that would show that these brakes were asbestos-free.  Based on the implications in Mr. Coykendall's deposition question and answers, the Court will assume for purposes of this opinion only, that the metallic, semi-metallic and ceramic brakes discussed in the deposition were asbestos-free products.

the relevant time period, leads the Court to conclude that the *Schwartz* court was not wrong to find that expert evidence was unnecessary to support a claim for design defect in connection with this specific product, on this specific design aspect.

The *Schwartz* opinion, which is the only Ohio case directly on point, is not overridden by the holdings of other Ohio appellate courts which have found that the design of other specific mechanical  automotive components involves information that is not commonly known or understood by lay people or the average juror.   When viewing this body of cases as a whole, this Court has found no clear indication that the Ohio Supreme Court would not uphold the decision *in Schwartz* on these specific facts and circumstances.  As stated above, this Court is directed not to disregard an appellate court decision on point, "unless we are presented with persuasive data that the [state supreme court] would decide otherwise*." Prestige Casualty Co. v. Michigan Mutual Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996).   There is no such sufficiently persuasive data available in this case.  Therefore, this Court will follow the holding in *Schwartz* and find that expert testimony is not necessary to prove the design defect alleged in the braking products at issue in this case.

-17-

B.    Evidence of Feasible Alternative

The fact that  some type(s) of asbestos-free brake product existed during the relevant time period is not in dispute.  What remains in dispute is whether these asbestos-free products qualify as a practical and technically feasible alternative design or formulation that would have prevented the harm to the Plaintiffs, without substantially impairing the usefulness or intended purpose of the product.   Plaintiffs contend that because certain manufacturers have admitted that they manufactured "some asbestos-free brakes" during Mr. Coykendall's period of exposure, there  is sufficient evidence to show that a feasible alternative was available.[8]   The existence of an asbestos-free alternative, manufactured and sold to the public, is evidence, though not necessarily conclusive evidence, that a feasible alternative existed.  Therefore, Defendants are not entitled to judgment as a matter of law on Plaintiffs' claim for design defect (O.R.C. § 2307.75) of the brake products under Count Five of the Complaint.  The parties are, however, free to provide additional evidence at trial addressing whether the available alternatives were, in fact, practically and technically feasible alternatives for some or all of the brake products used by Mr. Coykendall, and whether the asbestos-free components would have prevented the harm without substantially impairing the usefulness or intended purpose of the product as required under O.R.C. 2307.75(F).  *See, Phillips v. Hardware Wholesalers, Inc*. 762 F.2d 46, 48 (6th Cir.

---

[8]

 Plaintiffs claim that "Ford admitted feasible alternatives were available" but cite no evidence or admission in the record to support this claim. (ECF #91, pg. 18) Ford does admit that it "began a complete phase-out of asbestos-containing brake products beginning in 1983, and that by 1993 asbestos products were being used only in the limousine applications and the for the Mustang. (ECF #91- Ex. B).  Honeywell, likewise, admitted that "Bendix automotive friction product line included asbestos-free automotive friction products as early as 1966 and Honeywell last manufactured asbestos-containing automotive friction products in the United States in 2001."  (ECF #94- Ex. B).

1985); *Francis v. Clark Equip. Co.*, 993 F.2d 545, 552 (6th Cir. 1993); *Romans* at **42-43 (the existence of an alternative design in the market does not, without more, prove that the design is technically and economically feasible and able to function in the relevant application). With regard to the clutch and any other non-brake products, however, Plaintiffs have failed to provide any evidence, of any kind, that would support their claim that a practical and technically feasible alternative to the products used by Mr. Coykendall was available during the relevant period of time. Absent any evidence whatsoever to support their claim in connection with these other types of products, Defendants are entitled to summary judgment on the claim of design defect as it relates to the clutches and any other non-brake products addressed in the Complaint.

IV. <u>Substantial Factor Test</u>

The Ohio Revised Code, Section 2307.96(B) sets forth the applicable burden of proof that must be met by plaintiffs bringing tort claims for asbestos exposure. In relevant part, Section 2307.96(B) states:

> A plaintiff in a tort action who alleges any injury or lass to person resulting from exposure to asbestos has the burden of proving that the plaintiff was exposed to asbestos that was manufactured, supplied, installed, or used by the defendant in the action and that the plaintiff's exposure to the defendant's asbestos was a substantial factor in causing the plaintiff's loss or injury. In determining whether exposure to a particular defendant's asbestos was a substantial factor in causing the plaintiff's injury or loss, the trier of fact in the action shall consider, without limitation, all of the following:
>
> (1) The manner in which the plaintiff was exposed to the defendant's asbestos;
>
> (2) The proximity of the defendant's asbestos to the plaintiff when the exposure to the defendant's asbestos occurred;
>
> (3) The frequency and length of the plaintiff's exposure to the defendant's asbestos; and
>
> (4) Any factors that mitigated or enhanced the plaintiff's exposure to

asbestos.

"Where specific evidence of frequency of exposure, proximity and length of exposure to a particular defendant's asbestos is lacking, summary judgment is appropriate in tort actions involving asbestos because such a plaintiff lacks any evidence of an essential element necessary to prevail."  O. R. C. §2307.96.  Prior to the enactment of this section of the statute, the Ohio Supreme Court had defined "substantial factor" in connection with asbestos exposure cases as a factor "having such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophical sense" which includes every one of the great number of events without which any happening would not have occurred."  *Horton v. Harwick Chemical Corp.*, 73 Ohio St. 3d 679 (1995)(quoting Restatement of Law 2D, Torts (1965) Section 431).

Each Defendant in this case has sought dismissal of the claims against them alleging that Plaintiffs cannot show that exposure to their specific product was a substantial factor in causing Mr. Coykendall's injuries.

A.  Honeywell

Honeywell acknowledges that Mr. Coykendall testified he could recall installing Bendix brakes, and that he testified approximately forty percent of the brakes he installed over his lifetime were manufactured by Bendix.  Nonetheless, it argues that because he did not articulate a specific number of asbestos containing Bendix brakes he worked with over his lifetime, the case against them should be dismissed because Plaintiffs cannot establish that these brakes were a substantial factor in his injury.   In addition, Honeywell argues that Plaintiffs have failed to establish that Mr. Coykendall was actually exposed to the asbestos contained in the Bendix brake

products because he testified that about half of his work was done outdoors, and that he only used an emory cloth to scuff up the brakes he used about twenty percent of the time.

Plaintiffs have presented sufficient evidence upon which a jury could find that asbestos-containing Bendix brake products were a substantial factor in Mr. Coykendall's injury.  Mr. Coykendall testified that he performed thousands of brakes jobs over his lifetime and that forty percent of the brake replacement jobs were done with Bendix brakes.  He testified that he, himself, purchased multiple Bendix products to install on customer's cars, and that he maintained and cleaned those brakes at various points in addition to doing the original installation.  The process he used to install and maintain the brake products included scuffing, wiping down, and blowing dust from the brake products, all of which could have exposed him to asbestos-containing dust from those products.  He testified that he worked outside and inside in equal amounts, and that even outside, he worked in proximity to the dust created by the brakes.   In short, there is at least some testimony upon which a jury could find that Mr. Coykendall worked in close proximity to the asbestos in Defendant Honeywell's Bendix product, that his exposure to those products was frequent and extended over a long period of time, both in the installation of asbestos-containing products prior to 2001, and in the repair and maintenance of asbestos-containing products even post 2001 when asbestos brakes were no longer manufactured. Further, the Plaintiffs have submitted sufficient evidence upon which the jury can weigh any mitigating factors that would have reduced or prevented asbestos exposure against the factors that enhanced Mr. Coykendall's potential for exposure to the asbestos in those products.   For these reasons, Defendant Honeywell's request for Summary Judgment based on Plaintiffs' alleged failure to establish the Bendix products were a substantial factor in causing Mr.

Coykendall's injuries is denied.

B.  Ford Motor Company

Ford has also requested summary judgment on Plaintiff's claims alleging that they cannot

establish that asbestos-containing Ford products were a substantial factor in Mr. Coykendall's

injuries.   Mr. Coykendall testified that approximately twenty percent of the brake replacement

jobs he did were on brakes from the dealership, and he "had no idea who manufactured them or

who produced them."  (ECF #19-1, Page ID 3715).   Of that approximately twenty percent of

dealership brakes, he remembered working on cars from Honda, BMW, Audi, Acura, Hyundai,

Isuzu, Nissan, Mitsubishi.  He also remembered doing brake work on GM vehicles, Chryslers,

Jeeps, Plymouth, Dodges, AMC, and Toyota, although these were not necessarily replacing

dealer installed brake products.  (ECF #19-1, Page ID 3723).  He also testified that he had

removed "brakes, clutches, and gaskets, original equipment from Ford vehicles."  (ECF #19-1,

PageID 3729). [9]

While this testimony is not sufficient to establish that Ford brakes could be a substantial

factor in Mr. Coykendall's injuries, he also testified that he worked on Ford wrecker trucks,

beginning with two trucks in the early 1980s and expanding to up to fifteen trucks by 2010-2013.

He testified that he did brake work and inspections on the new Ford trucks, and with each

inspection, Mr. Coykendall testified he would use an air hose to clean the dust off the brakes.

Mr. Coykendall also testified that he would replace brake products on these vehicles at a rate of

---

[9]

  For the reasons set forth in the design defect section above, Plaintiffs cannot recover for
any asbestos exposure related to the removal or maintenance of clutches, gaskets, or other
non-brake automotive products.

-22-

one to two sets a week, using either NAPA or Ford brake products for each change.   The

testimony provided by Mr. Coykendall on this issue is sufficient to raise a question of fact for the

jury about whether his exposure to asbestos-containing Ford brake products was a substantial

factor in causing his injury.  For this reason, Ford's motion for summary judgment on this basis

is denied.

C.  <u>Genuine Parts</u>

Genuine Parts is a company that re-manufactured, assembled and sold automotive products,

including replacement brake shoes and brake pads.  (ECF #81-2, ¶ 13).  The division of Genuine

Parts that re-manufactures automotive parts is Rayloc. (ECF #81-2, ¶ 14).  Rayloc sold some

automobile brakes that did not contain asbestos as early as the late 1960s.  (ECF #81-2, ¶ 18).

By the early 1990s, the entire line of premium brakes shoes re-manufactured by Rayloc was

asbestos free.  By the mid 1990s, all brake pads were asbestos free.  (ECF #81-2, ¶19).

The National Automotive Parts Association ("NAPA") was an independent membership

corporation that functions as a trade association for distributors of automotive products.  (ECF

#81-2, ¶ 15).[10]  Some manufacturers who supplied products to the NAPA members were licensed

to use the NAPA logo and trademark for products sold to NAPA members.  (ECF #81-2, ¶ 16).

Rayloc re-manufactured brakes were sold at NAPA stores with the blue and yellow NAPA logo,

and in a blue and yellow box beginning in the mid-1990s.  (ECF #103-1, ¶9; 103-2, pg.3).

Mr. Coykendall never testified that he was exposed to any Rayloc brake product.  He did not

_____

[10]

  As of 2012, NAPA association's only member is Genuine Parts.   (ECF #81-2, Frantz
Depo. at 27.

testify that he removed any NAPA branded brake products.  He did testify that forty percent of the brakes he installed during his lifetime were NAPA brand brakes.  Mr. Coykendall testified that he only purchased new NAPA branded brakes, and to his knowledge his customers also bought new, not re-manufactured brakes from NAPA stores.   Rayloc did not manufacture new brakes, but supplied only re-manufactured brake products under the NAPA brand.  (ECF #81-2, Coykendall Depo. at 391:4-5).

In addition, Mr. Coykendall testified that he used NAPA branded brakes in a blue and yellow box.  Although Rayloc did make its re-manufactured brakes available under the NAPA logo in a blue and yellow box beginning in the 1990s, they were not the only manufacturer or re-manufacturer to use this NAPA branding.   Further, the great majority of Rayloc brake products were asbestos-free by the 1990s.

Plaintiff's have failed to provide any evidence that Mr. Coykendall used asbestos-containing Rayloc (Genuine Parts) re-manufactured brakes.  As there is no evidence that Mr. Coykendall was exposed to any asbestos through the use of one of their products, Genuine Part's Motion for Summary Judgment should be granted.

D.  Pneumo Abex LLC

Abex was the primary supplier of friction products used by Rayloc in the re-manufacture of brake products at some point in time.  (ECF #95-8, Frantz Depo. At PageID 7020).   It appears that the only connection alleged between Mr. Coykendall and Abex is that they were a supplier to Rayloc, who sold re-manufactured brake products under the NAPA logo.  Nowhere in any of his testimony does Mr. Coykendall identify Abex as a known supplier of an asbestos product that he

-24-

used or was otherwise exposed to.  Further, for the reasons set forth above, Plaintiffs have

insufficient evidence to support a claim that Mr. Coykendall was exposed to Rayloc re-

manufactured brakes.  Therefore, there is no evidence that Abex products played any role in his

injury.   Abex's motion for summary judgment based on Plaintiffs' failure to establish exposure

to the Abex product, let alone that any such product was a substantial factor in causing his injury

should be granted.

V.  Manufacture and Construction Defect/Failure to Conform to Representations

Count Five of Plaintiffs' Amended Complaint also asserts claims for Manufacture and

Construction Defect, pursuant to O.R.C. §2307.74, and Failure to Conform to Representations,

pursuant to O.R.C. §2307.77.  None of the parties addressed these claims in their Motions for

Summary Judgment, or in Plaintiffs' Responses to such motions.  As there are no factual

allegations in the Amended Complaint that could support such claims, and no evidence even

remotely related to such claims has been presented by Plaintiffs, it appears that these claims have

been abandoned.  They are, therefore, dismissed for want of prosecution, and for failure to allege

any facts that would support such claims.

VI.  Punitive Damages/Loss of Consortium

The Sixth and Eighth claims in the Amended Complaint are not separate causes of action, but

rather relate to the type of damages available upon proof of an independent cause of action.  As

the Plaintiffs have not provided sufficient evidence to maintain their substantive claims against

Genuine Parts and Pneumo Abex, there can be no finding of damages under either a punitive

damages, or loss of consortium theory as to those two Defendants.  The availability of punitive

damages against the remaining two defendants will remain an issue to be decided at trial after all of the evidence has been presented.

VII.  Ford's Motion for Sanctions

Ford argues that Plaintiffs should be sanctioned for failing to preserve and produce the lung tissue of Mr. Coykendall.  Ford sought preservation of this tissue for testing and argues that it is prejudiced by the inability to perform testing to determine the specific type of asbestos tissue that was present in his lungs.  Ford contends that if the fibers were amphibole asbestos fibers it would have undermined Plaintiffs claim that their product's chysoltile-containing products caused Mr. Coykendall's mesothelioma.    Ford seeks a sanction of dismissal or, in the alternative, the imposition of an adverse inference as to causation.  The Court declines to impose either sanction at this time.  However, Ford is welcome to argue this issue and address the causation issue at trial

**Conclusion**

For the reasons set forth above, the following motions are hereby GRANTED:  (1)  Motion for summary judgment (partial) on Plaintiffs' Common Law Product Liability Claims, filed by Ford Motor Company (ECF #78); (2)  Motion for Summary Judgment, filed by Genuine Parts Company (ECF #81); (3)   Motion for Summary Judgment, filed by Pneumo Abex, LLC (ECF #85).  The following motions are GRANTED in PART and DENIED in PART: (1)  Motion for Summary Judgment on Plaintiffs' Statutory Product Liability Claims for Compensatory Damages, filed by Ford Motor Company (ECF #79); (5) Motion for Summary Judgment, filed by Honeywell International, Inc. (ECF #84).  The design defect claims remains as to Ford and

-26-

Honeywell International, including the request for punitive damages and loss of consortium.  All other causes of action are dismissed.  The following Motions are DENIED at this time: (1) Motion for Partial Summary Judgment on Plaintiffs' Claim for Punitive Damages, filed by Ford Motor Company (ECF #83); (2) Defendant Ford Motor Company's Motion for Sanctions (ECF #80).

A status conference is scheduled for the remaining parties on Thursday, April 27, 2017 at 10:00 a.m.

IT IS SO ORDERED.


                                                   /s/ Donald C. Nugent
                                                   Donald C. Nugent
                                                   United States District Judge


DATED:   April 4, 2017